# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| **MICHELLE BEST-WILLIE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MICHAEL J. ASTRUE,**<br>**Commissioner of Social Security,**<br><br>**Defendant.** | **MEMORANDUM DECISION**<br>**AND ORDER**<br><br>**Case No. 1:10-cv-0176-PMW**<br><br><br>**Magistrate Judge Paul M. Warner** |

Before the court is Michelle Best-Willie's ("Plaintiff") appeal of Michael J. Astrue's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 401-434. After careful consideration of the written briefs and the complete record, the court has determined that oral argument is not necessary in this case.

## <u>BACKGROUND</u>

In June 2007, Plaintiff applied for DIB, alleging disability beginning on January 25, 2007.[1] Plaintiff's application was denied initially and upon reconsideration.[2] In May 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"),[3] and that hearing was

---

[1] *See* docket no. 8, Administrative Record ("Tr. ____") 138-39.

[2] *See* Tr. 84-85.

[3] *See* Tr. 100-01.

held on March 20, 2009.[4]  On August 18, 2009, the ALJ issued a written decision denying

Plaintiff's claim for DIB.[5]  In September 2010, the Appeals Council denied Plaintiff's request for

review,[6] making the ALJ's decision the Commissioner's final decision for purposes of judicial

review.  *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

On October 29, 2010, Plaintiff filed her complaint in this case, which was assigned to

District Judge Clark Waddoups.[7]  On March 3, 2011, both parties consented to having a United

States Magistrate Judge conduct all proceedings in the case, including entry of final judgment,

with appeal to the United States Court of Appeals for the Tenth Circuit.[8]  Consequently, the case

was reassigned to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(c) and rule 73

of the Federal Rules of Civil Procedure.[9]  After receiving an extension of time,[10] the

Commissioner filed his answer on March 10, 2011,[11] and the court received the Administrative

Record the same day.[12]

---

[4]  *See* Tr. 25-79.

[5]  *See* Tr. 9-24.

[6]  *See* Tr. 1-5.

[7]  *See* docket no. 3.

[8]  *See* docket no. 6.

[9]  *See id*.

[10]  *See* docket nos. 4-5.

[11]  *See* docket no. 7.

[12]  *See* docket no. 8.

Plaintiff filed her opening brief on June 15, 2011.[13]  The Commissioner filed his

responsive brief on July 15, 2011.[14]  Plaintiff filed her reply brief on July 29, 2011.[15]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence in the record and whether the correct legal

standards were applied."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and

citation omitted).  The Commissioner's findings, "if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  It requires more than a

scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084 (quotations and citation

omitted).  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor

substitute [its] judgment for that of the [ALJ]."  *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th

Cir. 2006) (quotations and citation omitted).  "The failure to apply the correct legal standard or to

provide this court with a sufficient basis to determine that appropriate legal principles have been

followed [are] grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005)

(quotations and citation omitted).

---

[13]  *See* docket no. 14.

[14]  *See* docket no. 15.

[15]  *See* docket no. 16.

A five-step evaluation process has been established for determining whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).  If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.  *See* 20 C.F.R. § 404.1520(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity.  If [the claimant] is, disability benefits are denied.  If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . .  If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.  If not, the evaluation proceeds to the fourth step . . . ."  *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. § 404.1520(a)(4)(iii).  At the fourth step, the claimant must show that the impairment prevents performance of his "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv).  "If the claimant is able to perform his previous work, he is not

disabled." *Williams*, 844 F.2d at 751.  If, however, the claimant is not able to perform his

previous work, he "has met his burden of proof, establishing a prima facie case of disability."  *Id*.

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."  *Id*.  At

this step, the burden of proof shifts to the Commissioner, and the decision maker must determine

"whether the claimant has the residual functional capacity [("RFC")] . . . to perform other work

in the national economy in view of his age, education, and work experience."  *Id*.; *see* 20 C.F.R.

§ 404.1520(a)(4)(v).  If it is determined that the claimant "can make an adjustment to other

work," 20 C.F.R. § 404.1520(a)(4)(v), he is not disabled.  If, on the other hand, it is determined

that the claimant "cannot make an adjustment to other work," *id*., he is disabled and entitled to

benefits.

### ANALYSIS

In support of her claim that the Commissioner's decision should be reversed, Plaintiff

argues that the ALJ erred:  (1) by improperly evaluating the opinions of Plaintiff's treating and

examining medical providers; (2) by determining that Plaintiff's impairments did not meet or

equal section 12.06 ("listing 12.06") of Appendix 1 of the relevant regulations (individually, a

"listing" and collectively, the "listings"), *see* 20 C.F.R. § 404, Subpart P, Appendix 1, listing

12.06 (anxiety-related disorders); (3) in evaluating the credibility of Plaintiff's subjective

complaints; (4) by failing to consider the statement of a lay witness; (5) in conducting the

analysis at step four of the sequential evaluation process; and (6) in conducting the analysis at

step five of the sequential evaluation process.  The court will address each argument in turn.

### I.  Medical Opinions

Plaintiff argues that the ALJ improperly rejected the opinions of two of Plaintiff's treating sources, Dr. Richard G. Hall ("Dr. Hall") and Dr. Richard A. Charlat ("Dr. Charlat").  Plaintiff also argues that the ALJ improperly evaluated the opinions of the state agency consultants.

> In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for controlling weight.  To make this determination, the ALJ . . . must first consider whether the opinion is well[ ]supported by medically acceptable clinical and laboratory diagnostic techniques.  If the answer to this question is "no," then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well[ ]supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

> Even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. §] 404.1527.  Those factors are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

> Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion . . . that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.

6

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotations and citations omitted) (sixth alteration in original); *see also* 20 C.F.R. § 404.1527(c).

With respect to the opinions of nonexamining physicians, the relevant regulation indicates that the ALJ still considers those opinions as opinion evidence. *See* 20 C.F.R. § 404.1527(e). Further, the ALJ is required to consider nonexamining opinions in accordance with the same standards used for considering treating source opinions. *See id.*; *see also id.* § 404.1527(c).

As with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies. *See, e.g.*, *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988).

Plaintiff argues that the ALJ erred by rejecting the opinions of Dr. Hall and Dr. Charlat. Because the ALJ concluded that Dr. Hall's and Dr. Charlat's opinions were entitled to diminished weight, it is implicit that the ALJ also viewed those opinions as not being entitled to controlling weight. Accordingly, the court turns to the deference and weight the ALJ gave to Dr. Hall's and Dr. Charlat's opinions. *See Langley*, 373 F.3d at 1119; *see also* 20 C.F.R. § 404.1527(c).

In her decision, the ALJ stated that she was not accepting Dr. Hall's and Dr. Charlat's opinions. In reaching that conclusion, the ALJ relied upon proper factors. First, the ALJ properly relied upon the fact that the doctors' opinions were not well supported by medically acceptable clinical and diagnostic techniques. *See* 20 C.F.R. § 404.1527(c)(3). Second, the ALJ

7

properly relied on the inconsistencies between the doctors' opinions and Plaintiff's description of her activities of daily living. *See id*. § 404.1527(c)(4). Third, the ALJ properly relied on the inconsistencies between the doctors' opinions and their own treatment reports. *See id*. Finally, the ALJ properly considered the inconsistencies between the doctors' opinions and the other medical evidence in the record. *See id*.

Plaintiff contends that the ALJ failed to identify the alleged inconsistencies between Dr. Hall's and Dr. Charlat's opinions and the remaining medical evidence in the record. That argument is without merit. While it is true that the ALJ did not specifically identify that record evidence in the portion of her decision concerning Dr. Hall's and Dr. Charlat's opinions, another portion of the ALJ's decision contains a thorough discussion of the medical evidence in the record.[16] A review of that portion of the ALJ's decision demonstrates that the ALJ discussed substantial evidence in the record that was inconsistent with the extreme limitations contained within Dr. Hall's and Dr. Charlat's opinions.

Plaintiff also argues that the ALJ erred in the treatment of the opinions of the state agency consultants. In essence, Plaintiff asserts that the ALJ should have given more weight to Dr. Hall's and Dr. Charlat's opinions than she gave to the opinions of the state agency consultants because Dr. Hall and Dr. Charlat are treating physicians, while the state agency consultants are nonexamining physicians. That argument fails for the following reasons. First, simply because Dr. Hall and Dr. Charlat are treating physicians, that does not require the ALJ to give their

---

[16] *See* Tr. 18-19.

opinions more weight than those of nonexamining physicians like the state agency consultants. Furthermore, as noted above, the ALJ considered proper factors in rejecting the opinions of Dr. Hall and Dr. Charlat.  Second, the ALJ properly considered the fact that the state agency consultants were experienced and knowledgeable regarding the requirements for demonstrating a disability.  *See id*. § 404.1527(c)(5)-(6).

To the extent that Plaintiff attempts to reargue the weight of the evidence before the ALJ on this issue, the court notes that such a tactic is futile on appeal because it is not this court's role to reweigh the evidence before the ALJ.  *See Madrid*, 447 F.3d at 790.  Indeed, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.  *See, e.g.*, *Rutledge*, 230 F.3d at 1174; *Eggleston*, 851 F.2d at 1247.  From an evidentiary standpoint, the only issue relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)).

Based on the foregoing, the court concludes that the ALJ did not err in her treatment of the opinions of Dr. Hall, Dr. Charlat, and the state agency consultants.

## II.  Listing 12.06

Plaintiff argues that the ALJ erred at step three of the sequential evaluation process by failing to properly evaluate whether Plaintiff's impairments met or equaled listing 12.06.  *See* 20 C.F.R. § 404, Subpart P, Appendix 1, listing 12.06; *see also* 20 C.F.R. §§ 404.1525, 404.1526. More specifically, Plaintiff argues that the ALJ erred by failing to conclude that Plaintiff

9

established the "C" criteria of listing 12.06.   *See* 20 C.F.R. § 404, Subpart P, Appendix 1, listing

12.06(C) (requiring "complete inability to function independently outside the area of one's

home").

At step three, a claimant has the "burden to present evidence establishing her impairments

meet or equal listed impairments."  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir.

2005).  In order to satisfy this burden, a claimant must establish that her impairment "meet[s] *all*

of the specified medical criteria.  An impairment that manifests only some of those criteria, no

matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Plaintiff appears to argue that because Dr. Charlat made the finding required to establish

the "C" criteria of listing 12.06, the ALJ should have concluded that the "C" criteria were

satisfied.  Because the court has already concluded that the ALJ did not err in rejecting the

opinions of Dr. Charlat, that argument necessarily fails.

## III.  Credibility

Plaintiff argues that the ALJ erred in evaluating the credibility of Plaintiff's subjective

complaints.  In general, "[c]redibility determinations are peculiarly the province of the finder of

fact, and [this court] will not upset such determinations when supported by substantial evidence."

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotations and citation omitted).  Although

credibility determinations "should be closely and affirmatively linked to substantial evidence,"

*id*. (quotations and citation omitted), they "do[] not require a formalistic factor-by-factor

recitation of the evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

SSR 96-7p clarifies the standards an ALJ must apply when evaluating the credibility of an individual's statements, including his or her allegations of pain.  *See* SSR 96-7p.  In addition to the objective medical evidence, an ALJ should consider the following factors when assessing the credibility of an individual's statements:

1.  The individual's daily activities;
2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.  Factors that precipitate and aggravate the symptoms;
4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.  Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id*.; *see* 20 C.F.R. § 404.1529(c); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

In this case, the ALJ considered proper factors in reaching the determination that Plaintiff's testimony and her subjective complaints were not fully credible.  First, the ALJ properly relied upon the fact that evidence of Plaintiff's daily activities was inconsistent with Plaintiff's allegations about the degree of her limitations.  *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 96-7p.  The ALJ noted that the evidence of record established that Plaintiff was able to independently perform her activities of daily living, including doing some household chores and laundry with assistance; preparing simple meals; handling personal finances; watching television;

11

and spending a good deal of time writing her husband's, her father's, and her own history for genealogy.[17]  Second, the ALJ properly noted that the record evidence established that Plaintiff's medical evaluations had been within normal limits, except for some abdominal tenderness; her diagnostic tests had been within normal limits; she had been treated solely with conservative care; she had required no surgery or extended periods of hospitalization; she had received very little physical therapy; and had received no mental health treatment.  *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(vi); SSR 96-7p.  Third, the ALJ properly referenced Plaintiff's noncompliance with her medical providers' recommendations to lose weight and exercise.[18]  *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(vi); SSR 96-7p.  Finally, in reaching her overall credibility determination, the ALJ noted her own observations of Plaintiff at the administrative hearing, including Plaintiff's ability to move back and forth freely and to maintain concentration and attention throughout the hearing.  *See* SSR 96-7p ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.").

The ALJ articulated sufficient reasoning and relied upon proper factors in determining that, overall, Plaintiff's testimony was not fully credible.  Furthermore, the court concludes that the ALJ's determination is "closely and affirmatively linked to substantial evidence."  *Kepler*, 68

---

[17]  *See* Tr. 169-81, 608.

[18]  *See* Tr. 670.

F.3d at 391 (quotations and citation omitted).  Accordingly, the court concludes that the ALJ did

not err in reaching her determination about Plaintiff's credibility.

## IV.  Lay Witness

Plaintiff argues that the ALJ failed to consider Plaintiff's husband's lay witness

statement.  Because the lay witness statement was not specifically mentioned in the ALJ's

decision, Plaintiff asserts that the ALJ gave the statement "no consideration whatsoever" and

"never even acknowledged its existence."[19]  Plaintiff's husband's statement, which was

submitted in the form of a letter, contains Plaintiff's husband's opinions about Plaintiff's

limitations.[20]

Plaintiff has failed to persuade the court that the ALJ did not consider Plaintiff's

husband's lay witness statement, even though it was not specifically referenced in the ALJ's

decision.  The ALJ specifically stated in her decision that she had considered all of the record

evidence.[21]  *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("[O]ur general

practice, which we see no reason to depart from here, is to take a lower tribunal at its word when

it declares that it has considered a matter." (alteration in original) (quotations and citation

omitted)).  Furthermore, the ALJ's decision contains an extensive discussion of the evidence and

demonstrates that the ALJ considered all of Plaintiff's impairments and limitations.  *See id*.  In

---

[19]  Docket no. 14 at 21.

[20]  *See* Tr. 236.

[21]  *See* Tr. 14.

addition, the court notes that the ALJ is not required to discuss every piece of evidence in the record.  *See, e.g.*, *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

For these reasons, the court concludes that the ALJ did not err in her consideration of Plaintiff's husband's lay witness statement.

## V.  Step Four

Plaintiff argues that the ALJ erred in conducting the analysis at step four of the sequential evaluation process.  At step four of her decision, the ALJ concluded that Plaintiff could return to her past relevant work as a photocopy machine operator.  In addition, the ALJ noted that Plaintiff could perform a significant number of other jobs in the national economy, including those of a parking lot attendant, a ticket seller, and a call-out operator.

In order for an ALJ's determination that a claimant can perform his past relevant work to be proper, the ALJ's decision must contain the following findings of fact:

1. A finding of fact as to the individual's RFC.
2. A finding of fact as to the physical and mental demands of the past job/occupation.
3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62; *see also Winfrey v. Chater*, 92 F.3d 1017, 1023-26 (10th Cir. 1996).

With respect to the first finding, Plaintiff argues that the ALJ erred by failing to incorporate into Plaintiff's RFC the limitations expressed by Dr. Hall and Dr. Charlat.  The court rejected that argument above and rejects it again here.  The ALJ did not err in her treatment of

the opinions of Dr. Hall and Dr. Charlat.  Accordingly, the ALJ was not required to include the limitations expressed by those doctors in Plaintiff's RFC.

As for the second finding, Plaintiff asserts that the ALJ erred by concluding that the job of photocopy machine operator qualifies as past relevant work because there is no evidence demonstrating that Plaintiff could perform that work.  In response, the Commissioner correctly notes that Plaintiff's own paperwork submitted in connection with her DIB application indicates that she performed the job of a night operations manager at a print and copy store, which included the duties required of a photocopy machine operator.[22]  In her reply, Plaintiff argues that because the job of night operations manager requires exertional and skill levels that are greater than those required for a photocopy machine operator, there is no evidence in the record establishing that Plaintiff could perform the job of a photocopy machine operator.  The court concludes that Plaintiff's arguments are without merit.  Contrary to Plaintiff's assertion, there is evidence in the record, as noted above, that establishes that Plaintiff had performed past relevant work that encompassed the duties of a photocopy machine operator.  Further, Plaintiff's argument in her reply brief is illogical.  If Plaintiff had the ability to perform the job of a night operations manager at higher skill and exertional levels, it logically follows that she had the ability to perform the job of photocopy machine operator at reduced skill and exertional levels.

Concerning the second and third findings, Plaintiff asserts that the ALJ erred by failing to satisfy her burden under SSR 82-62 to make those findings.  The court disagrees.  The ALJ

---

[22] *See* Tr. 180, 197.

considered the testimony of the VE, which included a description of the exertional level and skill requirements for the relevant jobs.[23]  The ALJ also noted that the VE reduced the number of the jobs in the national economy to accommodate for a sit/stand option.[24]  After obtaining that testimony, the ALJ posed a hypothetical question to the VE that required consideration of the exertional and skill level demands of the relevant jobs.  Based on the VE's response to the hypothetical question, the ALJ concluded that Plaintiff's past work did not require demands in excess of her RFC.  That analysis was sufficient.  *See, e.g.*, *Doyal v. Barnhart*, 331 F.3d 758, 760-61 (10th Cir. 2003); *see also Jordan v. Barnhart*, 213 Fed App'x 643, 646 (10th Cir. 2006) (unpublished).

With respect to the third finding, Plaintiff argues that the ALJ erred by relying on the VE's testimony because the hypothetical posed to the VE did not include the limitations expressed by Dr. Hall and Dr. Charlat.  Again, the court has already rejected that argument and rejects it again here.

As a final matter on this issue, the court notes that harmless error is an alternative ground for determining that the ALJ did not err at step four.  In addition to determining that Plaintiff could return to her past relevant work as a photocopy machine operator, the ALJ noted that Plaintiff could perform a significant number of other jobs in the national economy, including those of a parking lot attendant, a ticket seller, and a call-out operator.  As such, any errors that

---

[23]  *See* Tr. 23, 66-68.

[24]  *See* Tr. 23.

the ALJ may have committed concerning Plaintiff's ability to return to her past relevant work as a photocopy machine operator were harmless.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *see also Fischer-Ross*, 431 F.3d at 733-34 (recognizing applicability of harmless error analysis in Social Security context).

Based on the foregoing, the court concludes that the ALJ did not err in her analysis at step four of the sequential evaluation process.

## VI.  Step Five

Finally, Plaintiff argues that the ALJ erred at step five of the sequential evaluation process by giving a hypothetical to the VE that did not reflect all of Plaintiff's limitations. Plaintiff again asserts that the hypothetical given to the VE should have included the limitations expressed by Dr. Hall and Dr. Charlat.  That argument fails.  Again, the court has already concluded that the ALJ did not err in his treatment of Dr. Hall's and Dr. Charlat's opinions. Accordingly, the ALJ was not required to include the limitations expressed by those two doctors in the hypothetical provided to the VE.  *See Qualls*, 206 F.3d at 1373 ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment.  Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

17

## CONCLUSION AND ORDER

The court concludes that all of Plaintiff's arguments fail.  Therefore, **IT IS HEREBY ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

**IT IS SO ORDERED**.

DATED this 19th day of March, 2012.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge